# RIVERGATE RESIDENTS ASSOCIATION,
## *Petitioner,*
### *v.*
# LAND CONSERVATION AND DEVELOPMENT
## COMMISSION et al, *Respondents.*
### (No. 77-006, CA 10665)
590 P2d 1233

Bruce C. Cleeton, Portland, argued the cause and filed the brief for petitioner.

Thomas R. Williams, Deputy City Attorney, Portland, argued the cause for respondents City of Portland and Port of Portland. With him on the brief was Christopher P. Thomas, City Attorney, Portland.

Al J. Laue, Assistant Attorney General, Salem, waived appearance for respondent Land Conservation and Development Commission.

Before Thornton, Presiding Judge, and Tanzer and Buttler, Judges.

TANZER, J.

## TANZER, J.

Petitioner seeks judicial review of an order of the Land Conservation and Development Commission (LCDC) which dismissed a petition for review of an order of the Portland Metropolitan Area Local Government Boundary Commission allowing annexation of a portion of the Rivergate peninsula to the City of Portland. The annexation involves a 2,530-acre tract owned by the Port of Portland. Petitioner is an association of persons who own property or reside in a part of the Rivergate peninsula adjacent to the Port property. Petitioner's principal contentions are that the Boundary Commission order is invalid because its findings do not address certain statewide planning goals and that there is no substantial evidence to support LCDC's independent finding that the annexation complied with the applicable statewide goals.

The Port filed its petition for annexation with the Boundary Commission pursuant to ORS 199.490(1)(c)[1] in October, 1976, after the Port and the City had previously resolved to support the annexation subject to certain mutually acceptable conditions. The Boundary Commission held a public hearing on the proposal in November, 1976, and ordered annexation of the Port's Rivergate property to the City in January, 1977. Petitioner then filed its petition for review with LCDC pursuant to ORS 197.300(1)(d). After hearings before a hearings officer and LCDC itself, LCDC ruled that the annexation did not violate statewide planning goals and dismissed the petition. Petitioner now seeks judicial review of that dismissal order.

### I

Petitioner's first contention is that the Boundary Commission's order is invalid because its findings of

---

[1] ORS 199.490(1)(c) provides:

"A proceeding for a minor boundary change other than a transfer of territory may be initiated:

"* * * * *

"(c) By petition signed by the owners of at least one-half the land area in the affected territory * * *."

fact do not expressly address the applicable statewide planning goals, OAR 660-15-000, as required by *Petersen v. Klamath Falls,* 279 Or 249, 253-54, 566 P2d 1193 (1977). Respondents acknowledge that *Petersen* requires such findings and that the Boundary Commission did not make them, but contend that under the unusual circumstances of the case it was proper for LCDC to review the record to determine whether the Boundary Commission adequately considered the substance of the statewide planning goals. We consider the propriety of LCDC's independent review of the record as a question of whether it followed a lawful procedure, ORS 183.482(8)(a). *See* ORS 197.310(5).

The Supreme Court issued its opinion in *Petersen* after the Boundary Commission ordered the annexation, but before LCDC's review of that order. The controlling judicial decision at that time was this court's opinion in *Petersen v. Klamath Falls,* 27 Or App 225, 555 P2d 801 (1976), which expressly held that statewide planning goals did not apply to annexations. Thus, the Boundary Commission's failure to address the statewide goals in its findings conformed to the applicable case law at the time of the annexation order, but did not satisfy the law as thereafter construed by the Supreme Court in *Petersen.* Rather than remand, LCDC determined that this was an appropriate situation for it to follow a procedure similar to that followed by the Supreme Court in *Green v. Hayward,* 275 Or 693, 705-708, 552 P2d 815 (1976).

In *Green,* the Court conducted its own review of the record to determine whether a rezoning complied with the applicable comprehensive plan. There, the rezoning took place not long after the decision in *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), the parties had been afforded a fair hearing before the Board of County Commissioners, and the record showed that the Board had addressed the

relevant policy questions. Here, the same considerations apply with at least equal weight, because although the Supreme Court's decision in *Petersen* came after the annexation order, the record clearly reflects that petitioner had a fair hearing before the Boundary Commission and that the Boundary Commission considered the policies of the relevant goals in coming to its decision,[2] as we discuss *post.* Under these exceptional circumstances, analogous to those in *Green v. Hayward,* it was proper for LCDC to review the record for a showing that the Boundary Commission considered the policies of the relevant statewide goals in its approval of the annexation.[3]

## II

Although cast in terms of substantial evidence, petitioner's second contention is that LCDC erred in finding that "although the [Boundary Commission's] findings did not expressly refer to the Statewide Goals, they are adequate to show [that] the concerns of the applicable goals were met." Specifically, petitioner claims that the record does not show that the annexation complied with the following goals: Goal #1 (Citizen Involvement), Goal #2 (Land Use Planning), Goal #9 (Economy of the State), and Goal #11 (Public Facilities and Services). OAR 660-15-000.

The Supreme Court held in *Petersen v. Klamath Falls* that prior to the adoption of a comprehensive plan based on statewide goals, quasi-adjudicative decisions by governing bodies such as the order in this case must be based upon case-by-case consideration of the

---

[2]The decision as to whether the annexation complies with the statewide planning goals is for the Boundary Commission in the first instance, not LCDC. LCDC's role on review is not to substitute its judgment for that of the Boundary Commission. ORS 197.305(1). Thus, if the Boundary Commission had not considered the substantive policies expressed in the statewide goals, it would have been improper for LCDC to review the record to make its own resolution of those issues.

[3]We note, however, that this procedure is proper only in exceptional circumstances and that neither LCDC nor reviewing courts should make a practice of reviewing the record as a substitute for adequate findings by the lower tribunal. *See, Green v. Hayward,* 275 Or at 706.

goals. Thereafter in *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 15, 569 P2d 1063 (1977), the Supreme Court recognized that the statewide goals, with some few exceptions,[4] are not designed to guide land-use planning decisions about particular pieces of property. Therefore, we look to the goals cited by petitioner to determine if they are applicable and, if so, whether they were properly considered.

Goals #1 and #2 are essentially procedural in nature. Goal #1 requires local governments and planning agencies to "develop a citizen involvement program that insures the opportunity for citizens to be involved in all phases of the planning process." It also provides that "[t]he citizen involvement program shall be appropriate to the scale of the planning effort." OAR 660-15-000(1).

The record in this case shows that the requirements of Goal #1 for citizen participation in the planning process were met insofar as it is applicable. The Boundary Commission order reflects cognizance of the regional planning agency's Framework Plan and the Draft Multnomah County Framework Plan, both of which classify the subject land as urban and notes that the annexation is consistent with those plans in their present stages of adoption. There is no assertion that the contemporaneous planning effort did not fully comply the citizen involvement requirements of Goal #1. Additionally, petitioner and all other interested parties have been fully accorded the right to be heard. The Boundary Commission held a public hearing on the annexation proposal as required by ORS 199.463, and petitioner was represented at that hearing by an attorney who presented its objections to the proposal. Moreover, prior to the Boundary Commission hearing, both the City and the Port held public hearings to discuss annexation. Thus, there was ample opportunity for public input at several stages in the discussion

---

[4]For example, see Goals #3 (Agricultural Lands) and #7 (Areas Subject to Natural Disasters and Hazards).

of the annexation proposal.[5] Therefore we hold that LCDC properly concluded that the procedures followed were appropriate for the nature of the decision and comported with Goal #1.

■ Goal #2 mandates establishment of a "land-use planning process and policy framework as a basis for all decisions and actions related to the use of land and to assure an adequate factual base for such decisions and actions." Land-use decisions are to be consistent with city and county comprehensive plans and with regional plans. OAR 660-10-000.

The order, based upon a voluminous supporting record, reflects cognizance not only of the plans referred to above, but also of arrangements for coordination of services to the Rivergate area, benefits to the City and Port, plans for development of the Port property and the effects of annexation on the Rivergate area and the metropolitan region. Thus it is difficult to understand the substance of petitioner's contentions about Goal #2. The apparent basis of petitioner's complaint is that the City did not have an adopted comprehensive plan at the time of the Boundary Commission's annexation order. However, by written agreement, the City will utilize the County's comprehensive plan until a new plan for the Rivergate area is developed. The record also indicates that planning for the annexation was coordinated with other service districts and planning agencies. So long as the planning process addresses such concerns, there is no reason to require a moratorium on annexation merely because the City has not yet adopted a comprehensive plan. Therefore, LCDC correctly concluded that the order shows compliance with Goal #2 insofar as that goal may be applied to a pre-plan decision about this individual parcel of land.

---

[5]Petitioner objects to the fact that the planning staffs of the Port and the City discussed annexation and agreed upon conditions which made the proposal acceptable to both before the annexation was discussed at public hearings. There is nothing improper in such preliminary analysis, so long as the annexation decision itself is made with adequate public involvement.

■ Goal #9 is "to diversify and improve the economy of the state."[6] It prescribes a number of factors for state plans and policies to consider.[7] The Boundary Commission's finding on economic issues does not address all those factors, but the record shows that they were considered at length. For example, the Port's Study of Impacts of Annexation includes a cost-benefit analysis for the City and the Port and a summary of economic benefits to the community, as does the City's annexation study. Other materials analyze the economic impact of annexation on adjoining property owners. Assuming Goal #9 to be applicable outside of the plan development process, we hold that LCDC properly concluded that the annexation order properly addressed the objectives of Goal #9 insofar as they are applicable.

■ Goal #11 requires the planning and development of "a timely, orderly and efficient arrangement of public facilities and services to serve as a framework for urban and rural development." Plans should be coordinated to provide levels of facilities and services that are appropriate to the degree of development in a particular area. OAR 660-10-000(11). Three of the Boundary Commission's findings address these concerns,[8] and the findings are supported by the record.

------

[6] By its terms, Goal #9 appears to apply only to "state and federal economic plans and policies." Because the Boundary Commission was created by the legislature, ORS 199.425, we assume that Goal #9 is intended to apply to its decisions.

[7] "* * * Plans shall be based on inventories of areas suitable for increased economic growth and activity after taking into consideration the health of the current economic base; materials and energy availability; labor market factors; transportation; current market forces; availability of renewable and non-renewable resources; availability of land; and pollution control requirements."

[8] "3. The Port seeks annexation '. . . as the most efficient and economical way of providing urban services to the Rivergate area.'
"* * * * *
"6. The provision of services and utilities has been worked out between the Port and the City as a result of extensive negotiations and has been agreed to by resolutions of the governing bodies. The area

The record also shows that increased efficiency in provision of services was a major impetus for the annexation proposal and that the City's planning for services was coordinated with plans of other agencies. In sum, the order supports LCDC's conclusion that the Boundary Commission addressed the concerns of the applicable statewide goals.

■ Petitioner's final contention is that it was error for the LCDC hearings officer to allow the Port to supplement the record by adding several documents which were not part of the record before the Boundary Commission. This contention is correct. ORS 197.305(1); OAR 660-01-085(7). A procedural error is not cause for reversal of the LCDC order unless it prejudiced petitioner's substantial rights. ORS 183.482(8)(a). The challenged documents contain essentially the same information and analyses that are included in other exhibits that were part of the Boundary Commission record. Because the improperly received evidence was cumulative, there was no prejudice to petitioner's substantial rights and therefore no basis for reversal of LCDC's order.

Affirmed.

---

currently receives sewer and water on an outside-user basis from the city."

"7. This annexation will cause automatic withdrawal of parts of the area from both Multnomah Co. RFPD #1 and Multnomah Co. Service District for Street Lights No. 14. No adverse effects on the districts will be caused by this action."