Argued and submitted April 17,
reversed and remanded December 24, 1979

NORVELL, et al, *Petitioners,*

*v.*

PORTLAND METROPOLITAN AREA LOCAL
GOVERNMENT BOUNDARY COMMISSION, et al,
*Respondents.*

(Agency No. 1151, CA No. 10193)

MULTNOMAH COUNTY,
*Petitioner,*

*v.*

PORTLAND METROPOLITAN AREA LOCAL
GOVERNMENT BOUNDARY COMMISSION,
*Respondent,*
CITY OF PORTLAND, et al,
*Other Parties/Respondents,*

(Agency No. 1151, CA No. 10425)

604 P2d 896

George Wittemyer of Wittemyer & Bisaccio, P. C., Portland, filed a brief for petitioners G. Todd Norvell and Aleck A. Prihar.

Charles J. Merten of Merten & Saltveit, Portland, argued the cause and filed a brief for petitioner Multnomah County.

Edward J. Sullivan of O'Donnell, Rhoades, Gerber & Sullivan, Portland, filed a brief for respondent Portland Metropolitan Area Local Government Boundary Commission.

Thomas R. Williams, Senior Deputy City Attorney, Portland, argued the cause for other party City of Portland. With him on the brief was Christopher P. Thomas, City Attorney, Portland.

Joseph Voboril of Tonkon, Torp & Galen, Portland, argued the cause and filed a brief for other party The Oregon Bank.

No appearance for other party Maring & Associates.

Before Thornton, Presiding Judge, and Gillette and Campbell, Judges.

GILLETTE, J.

## GILLETTE, J.

Petitioners[1] seek review of an order of the Portland Metropolitan Area Local Government Boundary Commission (hereafter, "Boundary Commission") which approved the annexation to the City of Portland of 106 acres of mostly undeveloped land in Multnomah County. Petitioners have leveled a shotgun blast[2] at virtually every finding made by the Boundary Commission relating to the Statewide Planning Goals, and also have challenged the Commission's failure to make findings with respect to a number of the Goals. We agree that the Boundary Commission's findings are insufficient and therefore reverse, but think a significant preliminary question is how many of the pieces of buckshot we should consider.

Consideration of all of petitioners' arguments would require this court to make fundamental land use policy on the extent of the applicability of the Statewide Planning Goals to annexation decisions and to make significant interpretations of some of the Goals. Two recent events persuade us it would be inappropriate for us to undertake such an extensive policymaking task. Effective November 1, 1979, Oregon Laws 1979, ch 772, § 16, provides that appeals from Boundary Commission orders shall be, "if the decision of the boundary commission involves the application of the state-wide planning goals, in accordance with the provisions of sections 4 to 6 of this 1979 Act." Sections 4 to 6 of Oregon Laws 1979, ch 772, provide that a case like this would first be filed with the Land Use Board of Appeals which would make a recommendation to the Land Conservation and Development Commission. LCDC would then make the

---

[1] The individual petitioners have joined in the contentions made in Multnomah County's brief and make no separate contentions of their own. "Petitioners," therefore, refers to both the County and individual petitioners Norvell and Prihar.

[2] This "shotgun blast"is not to be confused with the "whiff of grapeshot" which we noted in *Neuberger v. City of Portland*, 37 Or App 13, 586 P2d 351 (1978). We express no opinion as to which form of weaponry is most effective.

[851]

final decision on the applicability and interpretation of the Statewide Planning Goals, subject to review in this court. Oregon Laws 1979, ch 772, thus contemplates that primary responsibility for land use policymaking is entrusted to two expert agencies, not this court.

The other recent event is the Supreme Court's decision in *Neuberger v. City of Portland*, 37 Or 13, 586 P2d 351 (1979). There, in apparently overruling, at least in part, *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973), the Supreme Court noted the extensive legislative and administrative activity in the land use area since *Fasano* was decided— seeming to imply that the time has come for Oregon courts to defer more to other branches of government in the area of land use law.

Given Oregon Laws 1979, ch 772, and the Supreme Court's *Neuberger* decision, we choose not to make unnecessary declarations in this case and will discuss two of the Boundary Commission findings which are improper under existing precedent: the findings concerning Goals 4 and 7.

The Boundary Commission's finding directed at Goal 4, which involves forest land, is finding 3(b), which states:

> "The property contains no merchantable timber and the applicant has submitted evidence which indicates the property is not viable as forest land. Thus, annexation does not violate Goal #4."

Petitioners argue that the only proper finding of fact concerning Goal 4 is that which states that there is no merchantable timber. The balance of the "finding," they argue, is a mere recitation of evidence and is thus unsatisfactory as a finding of fact. Petitioners are correct. *Graham v. OLCC*, 20 Or App 97, 530 P2d 858 (1975); *Hill v. Union County Court*, 42 Or App 883, 601 P2d 905 (1979).

Certain of respondents argue that the finding should be held satisfactory inasmuch as the record

[852]

shows the relevant matters were considered and "no magic words need by employed." *Sunnyside Neighborhood v. Clackamas County Comm.*, 280 Or 3 21, 569 P2d 1063 (1977). What *must* be employed, however, is a declarative sentence stating a fact *qua* fact. This was not done.

In view of the above, petitioners argue, full consideration of Goal 4 has not occurred since there is no finding concerning, *inter alia*, commercial forest land, wildlife habitat, scenic land, recreational land, or buffer zones.

It is true that these concerns were not addressed, although evidence was received bearing on all of them. The question is: was it necessary to address them?

We hold that it was. There was a good deal of focused evidence and discussion at the hearings on the full range of Goal 4 concerns. The Boundary Commission should have addressed these matters. *See Petersen v. Klamath Falls*, 279 Or 249, 566 P2d 1193 (1977).

Respondent City argues, however, that the Boundary Commission was not required to make many of the findings it made, including the one under discussion here:

> "The Boundary Commission's decision on this annexation does not in itself determine what specific uses will be made of this land. Rather, its decision determines in which jurisdiction this land belongs, which jurisdiction will plan the use of the land, and which jurisdiction is the logical provider of services to the area * * *."

If, as we understand it, this argument is meant to suggest that, in the main, land use planning goals are immaterial to a boundary commission's function, then we disagree. The commissions are responsible for assuring compliance with the goals. *See* ORS

199.462(1).[3] The specific statutory reference to the goals was only added in 1979 by Oregon Laws 1979, ch 374, § 2. We think, however, that the amendment only made explicit what was implicit in ORS 199.462(1) prior to that time. *See* ORS 197.180. If, instead, the argument is intended to suggest that, because other governmental entities will be required to act in order for any change in the zoning of this land to occur and, because review under the goals will be available at that time, any error committed by the Boundary Commission would be harmless, then we reject this suggestion. Petitioners are entitled to a proper proceeding now with the chance to prevail now. Among other things, the burden that would be placed upon petitioners by being required to relitigate the issues concerning the goals is sufficient "harm" to make the Boundary Commission's error reversible.

The parties appear to agree that Goal 7, which involves areas subject to natural disasters and hazards, is applicable to some degree; they do not agree as to the timing or extent of its applicability. We agree that it is applicable in at least a general way. The Boundary Commission found, in finding 3(c):

> "The petitioners have submitted a detailed geologic and soil study which indicates that the property is suitable for residential use. In addition, any development will have to comply with the City of Portland's ordinances on site development including Chapter 10 of the City Building Code. Thus, annexation complies with Goal 7 (protect life and property from natural disasters and hazards)."

Without discussing extensively all the contentions of the parties, it is sufficient to say that this "finding" suffers from the same defect as the one previously

---

[3] ORS 199.462(1) provides:

"In order to carry out the purposes described by ORS 199.410 when reviewing a petition for a boundary change, a boundary commission shall consider economic, demographic and sociological trends and projections pertinent to the proposal, and past and prospective physical development of land that would directly or indirectly be affected by the proposed boundary change."

discussed under Goal 4—it recites the availability of evidence rather than making a finding of fact. It is insufficient. *Graham v. OLCC, supra.*

A further question is raised by petitioners' contention that the Boundary Commission's deferral to the City of Portland concerning the evaluation of the safety of the development is impermissible. Although the reference to the City is not a "finding of fact," we find no error. The Boundary Commission is merely recognizing that, whatever its own preliminary determination of feasibility may be, the City has a separate and further responsibility to investigate and satisfy itself concerning the safety of any proposed development. The Boundary Commission was merely obligated to find that neither the soil nor any other known condition made all development unsafe. *Cf. Rivergate Residents Assn. v. LCDC,* 38 Or App 149, 590 P2d 1233 (979). As noted, however, the Boundary Commission did not even do that. The finding is insufficient and the case must be remanded for additional findings on this point as well.

Reversed and remanded.