Argued and submitted April 11, affirmed August 11,
reconsideration denied September 11,
petition for review denied December 16, 1980 (290 Or 249)
respondent Charlene Myers' petition for attorney fees
denied (51 Or App 819, 627 P2d 491) April 27, 1981

# MARQUAM INVESTMENT CORPORATION,
*Appellant,*

*v.*

# BEERS, et al,
*Respondents.*

## (No. A 7709 12615, CA 15690)

615 P2d 1064

[712-a]

Warde H. Erwin, Portland, argued the cause and filed the briefs for appellant.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for the respondent, The Honorable William C. Beers. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Michael H. Marcus, Legal Aid Service, Portland, argued the cause for the respondent, Charlene Myers. With him on the brief were Louis Savage, Legal Aid Service and Frank Wall, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff, Marquam Investment Corporation, which owns residential property which has been subject to past, and allegedly will be subject to future application of the Residential Landlord and Tenant Act,[1] ORS 91.700-91.895, brought this declaratory judgment action challenging the constitutionality of various provisions of the act. The trial court rejected Marquam's challenges and held that the act was constitutional. Marquam appeals. We affirm.

Marquam aims a disparate, scattered attack at the constitutionality of the act.[2] Marquam contests the validity of most major provisions of the act, usually on the basis of a variety of state and federal constitutional provisions. We will examine each challenged statutory provision in turn. However, before turning to the question of the validity of specific statutes, we may first dispose of Marquam's 'void for vagueness' claims.

■ Marquam argues that virtually the entirety of the Residential Landlord and Tenant Act is void for vagueness. This argument is inopposite because the

---

[1] As the Supreme Court noted in *Brewer v. Erwin,* 287 Or 435, 437, 600 P2d 398 (1979),

> "The present appeal is one phase of a landlord-tenant dispute to which the parties have devoted an extraordinary amount of their time and efforts and those of several courts." *See also* cases set out in n 1 at 287 Or 437; *Marquam Investment Corp. v. Myers,* 35 Or App 23, 581 P2d 545 (1978); *Myers v. Carter, Marquam Invest. Corp.,* 27 Or App 351, 556 P2d 703 (1977).

The very multiplicity of these actions raises the question of whether Marquam's claims are barred by res judicata or collateral estoppel. *See Ron Tonkin Gran Turismo v. Wakehouse Motors,* 46 Or App 199, 611 P2d 658 (1980); *Dean v. Exotic Veneers Inc.,* 271 Or 188, 531 P2d 266 (1975). While the parties have not raised this issue on appeal, the issue was presented below.

[2] This is an attack similar to, but not the same as, "a 720 degree whiff of grapeshot," *Neuberger v. City of Portland,* 37 Or App 13, 586 P2d 351 (1978), or "shotgun blast," *Norvell v. Portland Area LGBC,* 43 Or App 849, 604 P2d 896 (1979).

[713]

act is not penal, and therefore is not subject to a void for vagueness analysis.

> "* * * [The void for vagueness] principle, like that against *ex post facto* laws, is generally confined to penal sanctions. No one familiar with the common law expects due process to preserve one either from indefinite standards or from their delegations to juries or judges in civil cases, though one may stand to lose far more than under many criminal laws. * * *" *Megdal v. Board of Dental Examiners,* 288 Or 293, 299, 605 P2d 273 (1980); *see also Anderson v. Peden,* 284 Or 313, 587 P2d 59 (1978).

To paraphrase *Megdal,* Marquam "* * * cannot rest a constitutional attack on Residential Landlord and Tenant Act on the decisions that hold penal laws unenforceable for vagueness." 288 Or at 300.

Having resisted what *Megdal* terms "the seductive alliteration 'void for vagueness'," 280 Or at 297, we proceed to Marquam's challenges to specific sections of the Act. ORS 91.865 is a major focus of Marquam's rather diffuse attack. It provides:

> "(1) Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after:
>
> "(a) The tenant has complained to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation applicable to the premises materially affecting health and safety;
>
> "(b) The tenant has complained to the landlord of a violation under ORS 91.770; or
>
> "(c) The tenant has organized or become a member of a tenants' union or similar organization.
>
> "(2) If the landlord acts in violation of subsection (1) of this section the tenant is entitled to the remedies provided in ORS 91.815 and has a defense in any retaliatory action against him for possession. In an action by or against the tenant, evidence of a complaint within six months before the alleged act of retaliation creates a disputable presumption that the

landlord's conduct was in retaliation. The presumption does not arise if the tenant made the complaint after notice of a proposed rent increase or diminution of services.

"(3) Notwithstanding subsections (1) and (2) of this section, a landlord may bring an action for possession if:

"(a) The violation of the applicable building or housing code was caused primarily by lack of reasonable care by the tenant or other person in his household or upon the premises with his consent;

"(b) The tenant is in default in rent; or

"(c) Compliance with the applicable building or housing code requires alteration, remodeling or demolition which would effectively deprive the tenant of use of the dwelling.

"(4) The maintenance of an action under subsection (3) of this section does not release the landlord from liability under subsection (2) of ORS 91.800."[3]

Marquam first argues that ORS 91.865, in particular, and the Act in general, are invalid because they distinguish between residential and nonresidential tenancies.[4] Marquam contends that this is an unreasonable classification which results in a denial of equal protection.[5] According to Marquam, the

---

[3] Marquam filed this action prior to the effective date of certain 1977 amendments to the Act. The Act was further amended in 1979. None of the amendments alters our inquiry or analysis. Certain of them will be noted, *post,* where they are pertinent.

[4] ORS 91.705(3) defines "dwelling unit" as follows:

"(3) 'Dwelling unit' means a structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household. 'Dwelling unit' in the case of a person who rents space in a mobile home park, as defined in ORS 446.002, but does not rent the mobile home, means the space rented and not the mobile home itself."

[5] Marquam relies on Article I, Section 20 of the Oregon Constitution, and Amendment XIV to the United States Constitution, which provide respectively:

legislature may not prohibit only residential landlords from retaliating against their tenants.

■       Our review of ORS 91.865, and of the act in general,

> "* * * is limited to the minimal scrutiny test applicable to legislation in the areas of economics and social welfare. *See Dandridge v. Williams,* 397 US 471, 90 S Ct 671, 24 L Ed 2d 663 (1970). That test requires only that there be some rational basis for the classification made by the statute and '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 US 420, 426, 81 S Ct 1101, 81 S Ct 1218, 6 L Ed 2d 393 (1961). * * *" *Or. State Homebuilders v. City of Tigard,* 43 Or App 791, 797-98, 604 P2d 886 (1979).

Focusing particularly on the Oregon Constitution,

> "* * * Classification is rendered invalid by Article I, Section 20, Constitution of Oregon, only if it is arbitrary, unreasonable and not based upon differences in distinctive characteristics * * *." *Foeller v. Housing Authority of Portland,* 198 Or 205, 259, 256 P2d 752 (1953); *see also Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976).

■       Here, the classification between residential and nonresidential tenancies is not irrational, arbitrary or unreasonable. The legislature could have rationally concluded that the disparity in bargaining

---

"Section 20. ■

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities which upon the same terms, shall not equally belong to all citizens."

"Amendment XIV:

"All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

[716]

power between residential tenants and their landlords, and the particular personal significance of residential housing to tenants, *see Brewer v. Erwin,* n 1 *supra,* 287 Or at 444-45, justified differing treatment for residential tenancies. The classification is not unconstitutional. *See also Marcus Brown Co. v. Feldman,* 256 US 170, 198-99, 41 S Ct 465, 65 L Ed 877 (1921).

Marquam next argues that ORS 91.865 impermissibly impedes its access to the courts. Marquam emphasizes the following language in subsection(1):

"Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or *by bringing or threatening to bring an action for possession* after [the happening of certain specified events.]"[6]

Marquam contends that this language contravenes Article I, Section 10 of the Oregon Constitution, which provides:

"No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, *and every man shall have a remedy by due course of law for injury done him or his person, property, or reputation."* (emphasis added).

It is difficult to identify the precise conflict which Marquam apparently perceives between ORS 91.865(1) and Article I, Section 10. Marquam may misread the statute: The statute does not absolutely prohibit a landlord from bringing an action for possession even if the action ultimately is shown to be retaliatory. Rather, the statute provides that, in most

_____
[6] 1979 legislation has increased the number of these events. ORS 91.865(1)(b) now includes a complaint of a violation of either ORS 91.785 or 91.850, and two subsections have been added. They read as follows:

"(d) The tenant has complained to the landlord of a failure to comply with the notice requirements of subsection (4) of ORS 91.740; or

"(e) The tenant has testified against the landlord in any judicial, administrative or legislative proceeding." Oregon Laws 1979, ch 643, § 1.

situations, *see* ORS 91.865(3), *supra,* a tenant may defend against the action on the basis that it is retaliatory. ORS 91.865(2), *supra.* (The tenant may also recover damages if the action is, in fact, retaliatory. ORS 91.865(2); 91.815.)

■ On the other hand, Marquam may misinterpret the constitutional provision. Article I, Section 10 is not a guarantee that every litigant will be successful, or will not face efficacious defenses.

"'* * * Article I, Section 10, Oregon Constitution, was not intended to give anyone a vested right in the law either statutory or common; nor was it intended to render the law static * * *.'" *Josephs v. Burns & Bear,* 260 Or 493, 503, 491 P2d 203 (1971), quoting from *Noonan v. City of Portland,* 161 Or 213, 249, 88 P2d 808 (1939); *see also Ortwein v. Schwab,* 262 Or 375, 382, 498 P2d 757 (1972), *aff'd* 410 US 656, 93 S Ct 1172, 35 L Ed 2d 572, *reh den* 411 US 922, 93 S Ct 1551, 36 L Ed2d 315 (1973).

■ ORS 91.865(1) does not unconstitutionally impede Marquam's access to the courts.

■ Marquam also asserts that ORS 91.865 subjects it to involuntary servitude and that the application of the statute results in an uncompensated taking of its property.[7] These claims are interrelated. As

---

[7] Marquam relies upon the following constitutional provisions:

"Private property shall not be taken for public use, nor the particular services of any man be demanded without just compensation nor except in the case of the State without such compensation first assessed and tendered." Article I, § 18, Oregon Constitution.

"There shall be neither slavery nor involuntary servitude in the State, otherwise than as a punishment for crime whereof the party shall have been duly convicted." Article I, § 34, Oregon Constitution.

"Nor [shall any person] be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation." Amendment V, United States Constitution.

"Neither slavery nor involuntary servitude except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction." Amendment XIII, United States Constitution.

Marquam reads the statute, it forces a landlord to continue to provide services and to rent the premises indefinitely.

Marquam exaggerates the effect of the statute. ORS 91.865(1) only prohibits a landlord from decreasing services or from seeking to recover possession when those actions are retaliatory. The statute does not require all landlords, in all situations, to continue to rent their property with no decrease in service. Even an otherwise retaliatory and prohibited action for possession may be brought in certain circumstances, as when the tenant is in default in rent. ORS 91.865(3). In any event, we hold that ORS 91.865 does not subject Marquam to involuntary servitude or result in a taking of its property.

In *Marcus Brown Co. v. Feldman, supra,* the Supreme Court considered the validity of New York statutes which narrowly limited a landlord's right to recover possession to certain specified causes, and which otherwise required the landlord to continue to furnish necessary services.[8] The landlord

---

[8] The United States Supreme Court opinion contains the following summary of these provisions:

"C. 942, Laws of 1920, declares a public emergency to exist, and provides that summary proceedings shall not be maintainable to recover the possession of real property occupied for dwelling purposes in a city of a population of one million or more or in a city in a county adjoining such a city, except (1) where the person holding over is objectionable, (2) where the owner of record, being a natural person, desires the premises for immediate and personal occupancy by himself and his family as a dwelling, (3) where the owner intends to demolish the premises and rebuild, or (4) where the building is to be taken over by a cooperative ownership group. The landlord must show that the proceeding is one mentioned in the enumerated exceptions. * * *

"* * * * *

"C. 951, Laws of 1920, amending § 2040 of the Penal Law,, makes it a misdemeanor for any lessor or his agents, etc., wilfully or intentionally to fail to furnish necessary hot or cold water, heat, light, power, elevator service, telephone or any other service, required by the lease, or wilfully and intentionally to interfere with the quiet enjoyment of the leased premises by the occupant." 256 US at 171-173, n. 1.

"* * * objected finally that [the law], in so far as it required active services to be rendered to the tenants, is void on the rather singular ground that it infringes the Thirteenth Amendment. It is true that the traditions of our law are opposed to compelling a man to perform strictly personal services against his will even when he has contracted to render them. But the services in question although involving some activities are so far from personal that they constitute the universal and necessary incidents of modern apartment houses [or other residential tenancies]. * * *." 256 US at 199.

Even assuming that Marquam Investment Corporation is entitled to assert this constitutional right, ORS 91.865 does not subject Marquam to involuntary servitude. ORS 91.865 does not compel the unwilling performance of strictly personal services.

The statute also does not result in a taking of Marquam's property. The prohibition against retaliatory evictions hardly deprives Marquam of the "substantial beneficial use" of its property. *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 609, 612-614, 581 P2d 50 (1978); *Penn Central Transp. Co. v. New York City,* 438 US 104, 98 S Ct 2646, 57 L Ed 2d 631 (1978).

Marquam next focuses its attack on the disputable presumption set out in ORS 91.865(2), *supra.* The statute provides that,

"* * * In an action by or against the tenant, evidence of a complaint within six months before the alleged act of retaliation creates a disputable presumption that the landlord's conduct was in retaliation. The presumption does not arise if the tenant made the complaint after notice of a proposed rent increase or diminution of services."

Marquam contends that this disputable presumption contravenes a variety of constitutional prohibitions.

We first note that the presumption is no longer in effect. The 1979 legislature amended ORS 91.865(2) so as to delete the presumption. Ch 643, 1979

Or Laws § 1.[9] In any event, the presumption is constitutional.

■      Marquam first argues that the presumption denies it due process[10] because there is no rational connection between the fact proved and the fact presumed.

" "* * * Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts.'" *State Land Board v. United States,* 222 Or 40, 51, 352 P2d 539 (1960), quoting from *Tot v. U. S.,* 319 US 463, 467-468, 63 S Ct 1241, 87 L Ed 1519 (1943). (Footnotes omitted). *See also U. S. National Bank v. Lloyd's,* 239 Or 298, 382 P2d 851, 396 P2d 765 (1964).

The rational connection underlying the disputable presumption contained in ORS 91.865(2) is manifest. The proven fact is the tenant's complaint, or other specified action, occurring within the six months preceding the alleged act of retaliation. The presumed fact is that the landlord's conduct was retaliatory. It is rational to connect a tenant's complaint to a later retaliatory attempt to oust the tenant.

---

[9] The amendment simply deletes the second and third sentences of ORS 91.865(2) leaving the first sentence unchanged. *See* Oregon Laws 1979, ch 643, § 1.

No one argues that the deletion has rendered this issue moot. In view of Marquam's continuous struggles with the act, and since other actions, governed by the 1977 version of the statute, may be pending, we will consider the validity of the presumption. *See* ORS 28.060.

[10] *See* Amendment XIV, United States Constitution at n. 4, *supra;* Amendment V, United States Constitution at n. 6, *supra.*

[721]

■       Marquam also contends that the presumption violates the principle of separation of powers.[11] This contention is wrong. *See State Land Board v. United States, supra; Sadler v. Oregon State Bar,* 275 Or 279, 550 P2d 1218 (1976).

■ ■     Finally, contrary to Marquam's argument, the disputable presumption does not deprive Marquam of trial by jury.[12] Perhaps Marquam misunderstands the effect of a disputable presumption. While a disputable presumption may be sufficient to carry an issue to the jury, the question of the weight to be placed on the presumption is for the jury. A "* * * presumption does not endow the fact upon which it is based with any special value for evidentiary purposes. * * *" *U. S. National Bank v. Lloyd's, supra,* 239 Or at 327.

■       Marquam's last challenges to ORS 91.865 centers on subsection (3)(c) which provides:

"(3)   Notwithstanding subsections (1) and (2) of this section, a landlord may bring an action for possession if:

"* * *

"(c)   Compliance with the applicable building or housing code requires alteration, remodeling or demolition which would effectively deprive the tenant of use of the dwelling unit."

Although this provision would seem to be of some benefit to landlords, Marquam attacks it, first claiming that application of the subsection results in an uncompensated taking.[13] This claim is a reprise of

---

[11] Article III, § 1 of the Oregon Constitution provides:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the Administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this constitution expressly provided."

[12] Article I, § 17 of the Oregon Constitution provides:

"In all civil cases the right to trial by jury shall remain inviolate."

[13] *See* n. 6, *supra.*

Marquam's earlier "taking" argument, and has the same defects as that argument.

Again, Marquam first overstates the effect of the statute, reading it as a general prohibition which prevents any landlord from ever demolishing his property unless "the applicable building or housing code" requires such demolition. As we have noted, ORS 91.865 deals with retaliatory evictions only. The statute does not govern the conduct of all landlords in all situations.

In any event, the application of the statute does not result in a taking. The inability to tear down a structure at will does not deprive a landlord of the "substantial beneficial use" of his property. *Fifth Avenue Corp. v. Washington Co., supra; Penn Central Transp. Co. v. New York City, supra.*

■ Marquam next asserts that ORS 91.865(3)(c) is invalid because it contains an unconstitutional delegation of authority.[14] Marquam is incorrect. Even assuming that ORS 91.865(3)(c) itself constitutes a delegation of authority, rather than a cross-reference to another statutory delegation, *see* ORS 456.750-456.885, still the delegation is lawful. The taking effect of ORS 91.865(3)(c) is not made dependent upon any authority outside of that permitted by the constitution. The Oregon Constitution has

"* * * been construed to mean that the assembly cannot delegate its power to make law, but that it can delegate, at least to an agency of government, the power to determine the existence of facts or circumstances mentioned in the law upon which the law will become operative. *Foeller v. Housing Authority of Portland,* 198 Or 205, 264-268, 256 P2d 752 (1953); *Marr v. Fisher et al,* 182 Or 383, 187 P2d 966 (1947);

---

[14] Article I, § 21 of the Oregon Constitution provides:

"No ex post facto law or law impairing the obligation of contracts shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution."

*Van Winkle v. Fred Meyer, Inc.,* 151 Or 455, 462, 49 P2d 1140 (1935)." *State v. Sargent,* 252 Or 579, 580-581, 449 P2d 845 (1969).

Despite Marquam's multitudinous claims, we conclude that ORS 91.865 is constitutional. We turn to Marquam's attacks on other provisions of the Residential Landlord and Tenant Act.

Marquam makes identical claims against ORS 91.745, 91.750 and 91.770 and we will consider those statutes together. ORS 91.745 states that a rental agreement may not provide that a tenant waives certain rights, including rights and remedies under the act.[15] ORS 91.750[16] provides that a rental agreement may not permit the receipt of rent free of the obligation to comply with ORS 91.770(1). That statute in turn requires a landlord to maintain a dwelling unit

---

[15] ORS 91.745 provides:

"(1) A rental agreement may not provide that the tenant:

"(a) Agrees to waive or forego rights or remedies under ORS 91.700 to 91.895;

"(b) Authorizes any person to confess judgment on a claim arising out of the rental agreement; or

"(c) Agrees to the exculpation or limitation of any liability arising as a result of the other party's wilful misconduct or negligence or to indemnify the other party for that liability or costs connected therewith.

"(2) A provision prohibited by subsection (1) of this section included in a rental agreement is unenforceable. If a landlord deliberately uses a rental agreement containing provisions known by him to be prohibited and attempts to enforce such provisions, the tenant may recover in addition to his actual damages an amount up to three months' periodic rent."

[16] ORS 91.750 provides:

"A rental agreement, assignment, conveyance, trust deed or security instrument may not permit the receipt of rent free of the obligation to comply with subsection (1) of ORS 91.770."

in a habitable condition and specifies some of the requirements of habitability.[17]

---

[17] ORS 91.770 provides:

"(1)   A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. Four purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"(a)   Effective waterproofing and weather protection of roof and exterior walls, including windows and doors;

"(b)   Plumbing facilities which confirm to applicable law in effect at the time of installation, and maintained in good working order;

"(c)   A water supply approved under applicable law, which is:

"(A)   Under the control of the tenant or landlord and is capable of producing hot and cold running water;

"(B)   Furnished to appropriate fixtures; and

"(C)   Connected to sewage disposal system approved under applicable law and maintained in good working order to the extent that the system can be controlled by the landlord;

'(d)   Adequate heating facilities which conform to applicable law at the time of installation and maintained in good working order;

'(e)   Electrical lighting with wiring and electrical equipment which conform to applicable law at the time of installation and maintained in good working order;

"(f)   Building, grounds and appurtenances at the time of the commencement of the rental agreement in every part clear, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin;

"(g)   An adequate number of appropriate receptacles for garbage and rubbish in clean condition and good repair at the time of the commencement of the lease or rental agreement, and the landlord shall provide and maintain appropriate serviceable receptacles thereafter and arrange for their removal unless the parties by written agreement provide otherwise;

"(h)   Floors, walls, ceilings, stairways and railings maintained in good repair;

"(i)   Ventilating, air conditioning and other facilities and appliances, including elevators, maintained in good repair if supplied or required to be supplied by the landlord; or

"(j)   Safety from the hazards of fire.

■ Marquam maintains that the application of each of these statutes, and of all of them in conjunction, results in a taking of its property.[18] This is a repetition of earlier arguments, and, for the reasons that we have noted above, is wrong. *See Fifth Avenue Corp. v. Washington Co., supra; Penn Central Transp. Co. v. New York City, supra.*

■ Marquam also presents a variation of its prior equal protection claim. Marquam contends that because ORS 91.745, 91.750 and 91.770 distinguish between landlords and tenants, by granting certain rights to tenants and placing certain responsibilities on landlords, the statutes deny Marquam the equal protection of the laws.

We find the distinction between landlords and tenants to be reasonable, rational and constitutional. To paraphrase our earlier holding, the legislature could have rationally distinguished between residential landlords and their tenants because of the disparity in bargaining power, and the particular, personal significance of residential housing to tenants. *See Brewer v. Erwin, supra,* 287 Or at 444-445.

Marquam next attacks ORS 91.745, 91.750 and 91.770 by contending that those statutes deny it

---

"(2) The landlord and tenant may agree in writing that the tenant is to perform specified repairs, maintenance tasks and minor remodeling only if:

"(a) The agreement of the parties is entered into in good faith and not for the purpose of evading the obligtations of the landlord;

"(b) The agreement does not diminish the obligations of the landlord to other tenants in the premies; and

"(c) The terms and conditions of the agreement are clearly and fairly disclosed and adequate consideration for the agreement is specifically stated."

[18] *See* n. 6, *supra.*

the freedom to contract.[19] Marquam widens this attack to include two other statutes, ORS 91.735 and 91.790. ORS 91.735[20] deals with unconscionable provisions in rental agreements. ORS 91.790[21] provides that, unless the parties otherwise agree, the tenant shall occupy his dwelling unit only as a dwelling. The statute also allows the parties to agree that the tenant notify the landlord of any anticipated extended absence.

■ Marquam's freedom of contract claims are somewhat imprecise. For example, it is particularly difficult to see how ORS 91.790, which is not mandatory and which permits various terms in a rental

---

[19] *See* n. 13, *supra.*

Article I, § 10, United States Constitution provides:

"No state shall * * * pass any Bill of Attainder, ex post facto law, or law impairing the obligation of contracts * * *."

[20] ORS 91.735 provides:

"(1) If the court, as a matter of law, finds:

"(a) A rental agreement or any provision thereof was unconscionable when made, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provision, or limit the application of any unconscionable provision to avoid an unconscionable result; or

"(b) A settlement in which a party waives or agrees to forego a claim or right under ORS 91.700 to 91.985 or under a rental agreement was unconscionable when made, the court may refuse to enforce the settlement, enforce the remainder of the settlement without the unconscionable provision, or limit the application of any unconscionable provision to avoid an unconscionable result.

"(2) If unconscionability is put into issue by a party or by the court upon its own motion the parties shall be afforded a reasonable opportunity to present evidence as to the setting, purpose and effect of the rental agreement or settlement to aid the court in making the determination."

[21] ORS 91.790 provides:

"Unless otherwise agreed, the tenant shall occupy his dwelling unit only as a dwelling unit. The rental agreement may require that the tenant notify the landlord of any anticipated extended absence from the premises in excess of seven days no later than the first day of the extended absence."

agreement, impedes the freedom to contract. However, Marquam appears to believe that no statute may prohibit any contract provision even if the provision is unconscionable. *See* ORS 91.735, *supra.* Marquam is wrong.

> "* * * [S]tate legislation which reflects 'the use of reasonable means to safeguard the economic structure upon which the good of all depends,'does not violate the contract clause for 'the reservation of the reasonable exercise of the protective power of the state is read into all contracts.' *Home Building & Loan Ass'n. v. Blaisdell, supra,* 290 US at 442, 444. Under this standard, the real issue is 'whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.' *Id.* at 438. * * *" *Wilkinson v. Carpenter,* 277 Or 557, 564, 561 P2d 607 (1977).

All "* * * contracts [are] necessarily subject to being modified by requirements of laws enacted in pursuance of the police power. *See Powell Grove Cem. v. Multnomah Co.,* 228 Or 597, 600, 365 P2d 1058 (1961), and *Highway Com. v. Clackamas W. Dist.,* 247 Or 216, 220, 428 P2d 395 (1967)." *Schmidt v. Masters,* 7 Or App 421, 434, 490 P2d 1029 (1971); *see also Thoren v. Builders Board,* 21 Or App 148, 533 P2d 1388 (1975); *Marcus Brown Co. v. Feldman, supra.*

▮▮ Under this test, ORS 91.735, 91.745, 91,750, 91.770 and 91.790 are all valid; they do not unconstitutionally impair the ability to contract. The statutes are addressed to a legitimate end, the regulation of residential landlord and tenant relations, and the measures taken, including the requirement that landlords maintain habitable premises, are reasonable and appropriate to that end.

Marquam presents challenges to three more provisions of the Residential Landlord and Tenant Act. These challenges are all variations on other claims discussed and rejected earlier in this opinion.

ORS 91.765 requires that a landlord disclose to a tenant the name and address of the manager of

the rental property, and of a person authorized to receive service of process and notices sent pursuant to the provisions of the act. A person who fails to comply with this latter requirement becomes the landlord's agent for the purpose of service of process and notices.[22]

■        Marquam argues that ORS 91.765 subjects the landlord or his agent to involuntary servitude. Our discussion of Marquam's attack against ORS 91.865, on the basis that that statute subjected Marquam to involuntary servitude, answers this contention. ORS 91.765 does not compel the unwilling performance of strictly personal services. Rather, the statute enforces the various notice provisions of the act by ensuring that a tenant will know where to send such notices.

■        ORS 91.810,[23] which deals with a tenant's counterclaims in an action for possession or for rent, is

---

[22] ORS 91.765 provides:

"(1)   The landlord or any person authorized to enter into a rental agreement on his behalf shall disclose to the tenant in writing at or before the commencement of the tenancy the name and address of:

"(a)   The person authorized to manage the premises; and

"(b)   An owner of the premises or a person authorized to act for and on behalf of the owner for the purpose of service of process and receiving and receipting for notices and demands.

"(2)   The information required to be furnished by this section shall be kept current and this section extends to and is enforceable against any successor landlord, owner or manager.

"(3)   A person who fails to comply with subsection (1) of this section becomes an agent of each person who is a landlord for:

"(a)   Service of process and receiving and receipting for notices and demands; and

"(b)   Performing the obligations of the landlord under ORS 91.700 to 91.895 and under the rental agreement and expending or making available for that purpose all rent collected from the premises."

[23] ORS 91.810 provides:

"(1)   In an action for possession based upon nonpayment of the rent or in an action for rent when the tenant is in possession, the tenant may counterclaim for any amount, not in excess of the jurisdictional

attacked by Marquam on the basis that it unconstitutionally discriminates between residential and other tenancies. Marquam claims a denial of equal protection. We have answered this claim above. The distinction is reasonable, rational and constitutional.

█    Finally, Marquam challenges the constitutionality of ORS 91.800.[24] That statute provides that,

limits of the court in which the action is brought, that he may recover under the rental agreement or ORS 91.700 to 91.895. Unless the parties otherwise agree, the court shall hear and determine all issues within 15 days after the sevice of the summons and complaint upon the defendant. In the event the tenant counterclaims, the court from time to time may order the tenant to pay into court all or part of the rent accrued and thereafter accruing, and shall determine the amount due to each party. The party to whom a net amount is owed shall be paid first from the money paid into court, and shall be paid the balance by the other party. The court may at any time release money paid into court to either party if the parties agree or if the court finds such party to be entitled to the sum so released. If no rent remains due after application of this section, judgment shall be entered for the tenant in the action for possession.

"(2)   In an action for rent when the tenant is not in possession, he may counterclaim as provided in subsection (1) of this section but is not required to pay any rent into court."

The 1979 legislature deleted the requirement that the court hear and determine all issues within 15 days after service of the complaint and summons and added the following subsections.

"(3)   If the tenant does not comply with an order to pay rent into the court as provided in subsection (1) of this section, the tenant shall not be permitted to assert a counterclaim in the action for possession.

"(4)   When a tenant is granted a continuance for a longer period than two days, and has not been ordered to pay rent into court under subsection (1) of this section, the tenant shall be ordered to pay rent into court under subsection (2) of ORS 105.140. Oregon Laws 1979, ch 854, § 1.

[24] ORS 91.800 provides:

"(1) (a) Except as provided in ORS 91.700 to 91.895, if there is a material noncompliance by the landlord with the rental agreement or a noncompliance with ORS 91.770, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice if the breach is not

if there is a material noncompliance by the landlord with the rental agreement or with the habitability requirements of ORS 91.770, the tenant may notify the landlord that the tenancy will terminate if the breach is not remedied. Marquam argues that the application of this statute results in a taking of its property. Again, for the reasons set out above, Marquam is wrong.

█ As we noted at the outset of this opinion, Marquam has aimed a disparate, scattered attack at the constitutionality of the Act. The attack is furious, not accurate. It is apparently based upon the idea that government may not regulate private dealings, even to balance perceived social inequities and to respond to perceived public needs. The idea may be sincerely held, but it is patently wrong. We hold that the Residential Landlord and Tenant Act is constitutional.

Affirmed.

---

remedied in seven days in the case of an essential service or 30 days in all other cases, and the rental agreement shall terminate as provided in the notice subject to paragraphs (b) to (d) of this subsection.

"(b) If the breach is remediable by repairs, the payment of damages or otherwise and if the landlord adequately remedies the breach before the date specified in the notice, the rental agreement shall not terminate by reach of the breach.

"(c) If substantially the same act or omission which constituted a prior noncompliance of which notice was given recurs within six months, the tenant may terminate the rental agreement upon at least 14 days' written notice specifying the breach and the date of termination of the rental agreement.

"(d) The tenant may not terminate for a condition caused by the deliberate or negligent act or omission of the tenant, a member of his family or other person on the premises with his consent.

"(2) Except as provided in ORS 91.700 to 91.895, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or ORS ORS 91.770.

"(3) The remedy provided in subsection (2) of this section is in addition to any right of the tenant arising under subsection (1) of this section.

"(4) If the rental agreement is terminated, the landlord shall return all security recoverable by the tenant under ORS 91.760 and all prepaid rent."